UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL GORDON, et al.<br><br>Defendants. | No. 14-CR-10304-DPW |

**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE SEIZED FROM CALIFORNIA GPS SEARCHES AND MONITORING (Dkt. No. 150)**

CABELL, U.S.M.J.

On August 11, 2011, Transportation Security Administration (TSA) officials conducting a luggage screening discovered $60,000 concealed in defendant Michael Gordon's carry-on luggage. Massachusetts State Police (MSP) officers interviewed Gordon about the money and his travel plans and then seized the money after finding probable cause to believe it was connected to drug trafficking activity. Gordon was not taken into custody and was allowed to continue on his flight to California. Five months later, Gordon and his attorney met with other law enforcement officials to discuss the airport incident and other related matters. Based in large part on the evidence obtained from these two separate encounters, law enforcement officials in California subsequently obtained a total of five GPS warrants to track Gordon's use of rental cars during five separate trips Gordon took to California between October 2012 and August 2013.

Gordon moves to suppress the five GPS warrants on the ground that the Logan airport related evidence was obtained in violation of his Fourth Amendment right, and the evidence

obtained as a result of the execution of the GPS warrants is therefore its poisonous fruit which must be suppressed.[1]  He argues further that there was no probable cause for the warrants to issue because the affidavits failed to establish that GPS monitoring of Gordon in rental cars was likely to lead to evidence of the targeted crimes.  For the reasons set forth below, I recommend that the motion to suppress evidence from the GPS warrants be denied.

## I.     BACKGROUND

On October 12, 2012, a Magistrate Judge sitting in the Eastern District of California authorized Homeland Security Investigations (HSI) Special Agent (SA) Michael Barge's request to install and monitor a GPS tracking device on a rental car Gordon had reserved at National Car Rental at Sacramento Airport in Sacramento, California.  Among other things, the affidavit included the evidence obtained from the Logan airport related incidents.

Approximately two months later, on December 7, 2012, HSI SA Derek Ohlander sought and obtained a second warrant, this time in the Northern District of California, to install and monitor a GPS tracking device on a vehicle Gordon had reserved for a December 8, 2012 trip to Oakland, California.  Subsequently, after learning that Gordon had once again booked flights to Northern California and reserved rental vehicles with National Rental Car, agents sought and obtained three additional warrants to install and monitor GPS tracking devices on those vehicles as well, on January 31, 2013, March 15, 2013, and August 16, 2013.  The affidavits recounted the August 2011 encounter between Gordon and the TSA and MSP at Logan Airport, and went on to discuss subsequent developments in the investigation.

---

[1] Gordon has moved separately to suppress evidence obtained from his interactions with TSA and MSP officials at Logan Airport on August 11, 2011.  (Dkt. No. 144).  In this Court's view, Gordon voluntarily provided information to officers at Logan as well as the subsequent meeting he attended with his counsel, and none of the evidence was obtained in violation of any of the defendant's protectable interests.

More specifically, on Jan 31, 2013, HSI SA Ohlander sought and obtained from the Northern District of California a warrant to install and monitor a GPS tracking device on another vehicle reserved by Gordon.  The accompanying affidavit included the information provided in the earlier affidavits, and also included additional information regarding Gordon's December 2012 trip.  Among other things, the affidavit stated that Gordon during that trip had visited co-defendant Olea's residence where marijuana was being cultivated, and had visited numerous post offices and mailed several parcels of marijuana to Massachusetts using a fictitious sender's name.

On March 15, 2013, HSI SA Aleo Brugnara sought and obtained from the Northern District of California a warrant to install and monitor a GPS tracking device on another vehicle reserved by Gordon.  The warrant affidavit included the information provided in the earlier affidavits as well as evidence obtained as a result of the January 31, 2013 warrant.  This new information similarly recounted that Gordon had during the month of February 2013 mailed several parcels of marijuana to Massachusetts using a fictitious sender's name.

On August 16, 2013, HSI SA Ohlander sought and obtained from the Northern District of California another warrant to install and monitor a GPS tracking device on another vehicle reserved by Gordon.  Once again, the affidavit attached to this warrant application included the information provided in the earlier affidavits, and recounted information learned from execution of the March 2013 warrant, including that Gordon had mailed several parcels of marijuana to Massachusetts using a fictitious sender's name.

**II.     ANALYSIS**

**A.  The Affidavits Supporting the Search Warrants Did Not Rely on Unconstitutionally Obtained Evidence**

Gordon's principal argument is that the applications for the GPS monitoring warrants relied heavily on evidence obtained during an allegedly unconstitutional encounter with law enforcement officers at Logan Airport, and should be suppressed on that ground.  However, the Court has previously concluded that none of the evidence obtained from interactions with Gordon at the airport was obtained in violation of the defendant's constitutional rights.  (*See* Court's Report and Recommendation on Defendant's Motion to Suppress, Dkt. No. 226). Assuming that the Court's conclusion was not reached in error, law enforcement personnel were entitled to rely upon the evidence in seeking the GPS warrants at issue here.  Moreover, and as set out in the Court's Report and Recommendation, even assuming *arguendo* that the airport evidence was obtained improperly, it was still wholly proper to rely on statements Gordon made five months later when he voluntarily met with HSI agents and provided much of the same information.

To be sure, Gordon contends the evidence from this later meeting should be treated as fruit of the poisonous tree, under *Wong Sun*, but that argument has no merit because the later meeting was so sufficiently attenuated from the Logan airport events as to constitute a separate, distinct event.  *Wong Sun v. United States*, 371 U.S. 417, 488 (1963).  The Supreme Court has identified three factors for courts to consider in determining whether the causal chain between two events is sufficiently attenuated: (1) the time elapsed between the constitutional violation and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.  *Brown v. Illinois,* 422 U.S. 590, 603 (1975).

None of these factors militates in Gordon's favor here.  First, five months elapsed between the Logan airport incident and the meeting with law enforcement officers.  The First Circuit and other courts have found dramatically smaller periods of time to constitute attenuation.  *See United States v. Stark,* 499 F.3d 72, 76 (1st Cir. 2007) (two days); *see also United States v. Conrad,* 673 F.3d 728, 733 (7th Cir. 2012) (two hours); *United States v. Gross,* 624 F.3d 309, 318 (6th Cir. 2010) (two months); *United States v. Barnum,* 564 F.3d 964, 972 (8th Cir. 2009) (15 minutes); *United States v. Martin,* 434 F.3d 846, 849-50 (5th Cir. 2005) (three months).

Second, Gordon in that interim period obtained counsel, and attended the meeting with and on the advice of his counsel, all in an effort to convince the government that he was a legitimate businessman.  In that light, Gordon affirmatively voluntarily made statements and produced documentary evidence as much for his own benefit as anything else.  Gordon's act of obtaining counsel and meeting with the agents to further his own interests surely constitutes an intervening circumstance supporting attenuation and admissibility of the evidence.

Finally, there was nothing flagrant or wildly improper about the conduct of the TSA or MSP.  Gordon concedes that TSA personnel were entitled to search his luggage, and there was nothing improper or excessive about their decision to contact the MSP.  Similarly, even assuming the MSP officers improperly seized Gordon, they were polite, brief and at all times acted based on the reasonable belief that Gordon was involved in drug trafficking.

In short, the GPS warrant affidavits did not rely upon improperly obtained evidence.

### B.  There Was Probable Cause For the GPS Warrants to Issue

Gordon also contends that the GPS warrant applications were not supported by probable cause because the supporting affidavits did not establish probable cause to believe that the

specific trips on which Gordon was monitored were "unrelated to his lawful business of buying cars." Before the GPS monitoring at issue in this motion occurred, the Supreme Court determined that the "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" within the Fourth Amendment. *United States v. Jones*, 132 S. Ct. 945, 949 (2012). As such, the Court considers whether the monitoring was conducted pursuant to validly issued warrants.

A court that reviews a magistrate judge's issuance of a warrant "simply [ensures] that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The court reviews questions of law *de novo*, *United States v. Woodbury*, 511 F.3d 93, 96 (1st Cir. 2007), and findings of fact for clear error. *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005); *United States v. McMullin*, 568 F.3d 1, 5 (1st Cir. 2009). The reviewing court must "give due weight to the inferences drawn from [the facts presented by the affiant] by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). A finding of probable cause will be reversed only if there was "no 'substantial basis' for concluding that probable cause existed." *Ribeiro,* 397 F.3d at 48. In a close case, doubts are resolved in favor of upholding a warrant. *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984); *see also United States v. Drake*, 673 F.2d 15, 19 (1st Cir. 1982).

Probable cause to search means "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. It is "a practical, nontechnical conception" based on "common-sense conclusions about human behavior." *Id.*; *see also United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012). The task of a judicial officer authorizing a search warrant is "simply to make a practical, common-sense decision whether, given all the

6

circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence will be found in a particular place." *Gates*, 462 U.S. at 238.

In reaching his or her decision, the issuing judge may rely on the experience of law enforcement officers to draw the conclusion that evidence of a crime is likely to be found in a particular location. *United States v. Feliz*, 182 F.3d 82, 87 (1st Cir. 1999); *Grimaldi v. United States*, 606 F.2d 332, 337 (1st Cir. 1979); *United States v. Khounsavanh*, 113 F.3d 279, 284 (1st Cir. 1997) ("whether a law-enforcement affiant included a professional assessment of the probable significance of the facts related by the informant, based on experience or expertise," was a factor that could contribute to probable cause determination).

Applying this standard here, the Court concludes with little difficulty that each of the GPS warrants at issue was supported by probable cause. With respect to the first warrant, SA Barge's October 3, 2012 affidavit provided a basis to believe that Gordon was obtaining marijuana from California and having it transported to Massachusetts. Among other things, SA Barge averred that Gordon had transferred at least $300,000 to California based co-defendant Dagoberto Olea (who had been arrested in September 2011 for the possession of marijuana for sale) and his brother. SA Barge also averred that no IRS Form 8300s could be found to support Gordon's claim that he made money buying and selling high-end vehicles.[2] He also averred that a box Gordon had been seen carrying into his business in August 2012 was found to contain marijuana, and SA Atwood had been able to smell the odor of marijuana emanating from the business. In addition, SA Barge averred that Gordon had flown to California and Nevada every couple of weeks since June 2012. He stated that Gordon had stayed only a day or two on each

---

[2] IRS Form 8300 is used to record the report of cash payments over $10,000 received in a trade or business. *See* www.irs.gov/pub/irs-pdf/f8300.pdf.

7

visit, and during two of the trips rented a vehicle from National Rental Car and performed a recognized counter-surveillance technique often employed by narcotics traffickers to identify and lose law enforcement surveillance.  Further, Gordon on one of those trips drove close to 1100 miles in two days, and purchased from a Home Depot store several items often used to ship and disguise the odor of marijuana, including 20 five-gallon buckets, duct tape and oil.  (*See* Barge Aff., ¶¶ 12-31).  Coupled with SA Barge's assertion based on his training and experience that tracking drug traffickers in motor vehicles frequently leads to evidence of narcotics and money laundering offenses, the affidavit established probable cause to believe that tracking Gordon's movements in California would lead to evidence of his marijuana trafficking activities.

The four subsequent GPS warrant applications warrant little additional discussion.  Each warrant was supported by an affidavit which contained the same evidence as SA Barge's October 2012 affidavit.  In addition, each of the last three warrants contained new evidence showing that Gordon used each preceding California visit to obtain marijuana and surreptitiously mail it to Massachusetts.  Given this Court's conclusion that the evidence in SA Barge's original affidavit was sufficient to establish probable cause to install a GPS tracking device, it follows that each of the successive warrants was supported by probable cause.

### III.   CONCLUSION

Based upon the foregoing, it is respectfully recommended that the defendant's motion to suppress the GPS warrants be DENIED.  The defendant is hereby advised that under the provisions of Federal Rule of Criminal Procedure 59(b) any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which

objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 59(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  January 24, 2017